ELIASON CORPORATION, a Michigan corporation, Plaintiff,

v.

BUREAU OF SAFETY AND REGULATION OF the MICHIGAN DEPARTMENT OF LABOR; and C. Patrick Babcock, Robert Burns, William Sebring, Richard Davis, George Cheyne, Richard Sorrentino, Ronald Knittel, and Kenneth Colby, individually, jointly, and severally, Defendants.

No. K81–126 CA4.

United States District Court, W.D. Michigan, S.D.

May 25, 1983.

**1300**

Lee Boothby, Boothby & Yingst, Berrien Springs, Mich., for plaintiff.

Gregory T. Taylor, Asst. Atty. Gen., Labor Div., Lansing, Mich., for C. Patrick Babcock and Wm. Long.

James D. Mueller, Asst. Atty. Gen., Labor Div., Lansing, Mich., for Burns, Sebring, Davis and Cheyne.

Thomas G. Parachini, Brown, Colman & De Ment, Kalamazoo, Mich., for Sorrentino, Knittel and Colby.

## OPINION

### BENJAMIN F. GIBSON, District Judge.

This is a civil rights action seeking damages and declaratory and injunctive relief under 42 U.S.C. §§ 1983 and 1985(3), with pendent claims for abuse of process and trespass. The action arises out of an inspection of plaintiff's plant in Portage conducted on May 24, 1979 by defendant employees of the Bureau of Safety and Regulation, Michigan Department of Labor, who were accompanied by defendant officers from the Kalamazoo County Sheriff's department and the City of Portage police

department. There are several motions presently before the Court.

## I. RES JUDICATA

The first motion the Court will address is the motion of the defendant sheriff's deputies for summary judgment based on res judicata and collateral estoppel. The state defendants have joined in the motion. The motion is grounded on a suit based on the same inspection which was filed in the Circuit Court for the County of Kalamazoo on June 26, 1979. Seven of the eight defendants in that suit were later named as defendants here. In that action, plaintiff alleged that its constitutional rights had been violated by the issuance and execution of an invalid search warrant. Plaintiff asked that the search warrant be quashed, that any information, administrative proceedings, citations, or penalties obtained as a result of the warrant be suppressed, and that all materials and evidence seized be returned. As described by presiding Circuit Judge Mullen, plaintiff also asked the court "to prohibit further search by defendants, or, in the alternative, to prohibit future search without valid search warrant issued after the plaintiff has received notice and has had an opportunity to be heard."

On July 27, 1979, after a hearing, plaintiff was granted a "temporary injunction." Review of a certified copy of the Circuit Court docket sheet indicates that no significant action then took place until plaintiff deposed two of the defendants in January, 1981. In May of that year, plaintiff moved to amend its complaint to seek damages from defendants based on § 1983, abuse of process, and trespass. After oral argument, Judge Mullen denied the motion. Again, a period of inaction ensued, and the case was noticed for lack of progress. Plaintiff filed a motion to save the case from dismissal, but after oral argument on July 12, 1982, the case was ordered dismissed for want of progress on August 30, 1982. Plaintiff subsequently filed a motion to reinstate. On January 10, 1983, after Judge Mullen had reviewed briefs and listened to oral argument, he denied plaintiff's motion.[1]

---

1. Copies of correspondence on file with this Court indicate that plaintiff has since attempt-

■ Defendants contend that the principles· of res judicata bar this action because plaintiff had the opportunity to pursue in state court the claims raised here. The rules of res judicata and collateral estoppel are generally applicable to § 1983 actions. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Under 28 U.S.C. § 1738, the availability of these defenses is controlled by Michigan law, since Congress has specifically required all federal courts to give preclusive effect to a state-court judgment whenever the courts of that state would do so. *Allen,* 449 U.S. at 96, 101 S.Ct. at 415; *Harl v. City of LaSalle,* 679 F.2d 123, 125 (7th Cir.1982); *Southern Jam, Inc. v. Robinson,* 675 F.2d 94, 97–98 (5th Cir.1982).

The principles of res judicata in Michigan were recently canvassed in *Brownridge v. Michigan Mutual Insurance Co.,* 115 Mich. App. 745, 747–48, 321 N.W.2d 798 (1982):

Our opinions have endorsed both a narrow and a broad application of the rule. Narrow application bars a second action only if the same question was actually litigated in the first proceeding. Broad application bars as well those claims arising out of the same transaction which plaintiff could have brought, but did not. In recent opinions, we have acknowledged the conflicting language and opted for the broad rule. [*Gose v. Monroe Auto Equipment Co.,* 409 Mich. 147, 160, 294 N.W.2d 165 (1980).]

. . . . .

The plea of res judicata applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.

. . . . .

[A] judgment, to constitute a bar to a claim in a subsequent action, must be rendered upon the merits, upon the same

matter in issue, and between the same parties or their privies. [citations omitted]

## A. JUDGMENT ON THE MERITS

■ Thus, the first element this Court must consider is whether there has been a judgment on the merits. The question of whether a dismissal for no progress under Michigan law constitutes an adjudication on the merits so that the doctrine of res judicata applies was recently addressed in *Wilkie v. Schwan's Sales Enterprises, Inc.,* 541 F.Supp. 1193 (W.D.Mich.1982). After looking to the relevant provisions of the Michigan General Court Rules, GCR 1963 501.3, 504.2 and several opinions of the Michigan Court of Appeals, it was concluded that Michigan law provides that no-progress dismissals which are "housecleaning" dismissals in that they are handled ministerially without individualized consideration are not adjudications on the merits. Such would be the case where "the circuit judge did not consider the matter, he exercised no judgment, he did not attempt to determine whether there was any distinction or basis for differentiation between the antecedent of the present action and the several dozen other actions being dismissed at the same time." *Caughey v. Rozycki,* 22 Mich.App. 317, 321–22, 177 N.W.2d 257 (1970). On the other hand, where a dismissal for lack of prosecution follows individualized consideration, in which the trial court considers all the pertinent circumstances of a particular case before exercising its discretion to dismiss for no progress, there is an adjudication on the merits. *Wilkie,* 541 F.Supp. at 1197. *See also* Restatement (Second) of Judgments § 19, comment e (1982); Fed.R. Civ.P. 41(b).

■ In this instance the no-progress dismissal of the state court case followed individualized consideration of the pertinent circumstances. Plaintiff filed a motion to prevent the dismissal and Judge Mullen heard oral argument before ruling. The

ed to file an appeal with the Michigan Court of Appeals, but there appears to be some misunderstanding as to whether or not it is an appeal

as of right, and it is not clear to this Court that an appeal has been properly taken.

parties again had an opportunity to file briefs and were given a hearing on plaintiff's motion to reinstate. As in *Wilkie*, this was not a "rubber stamp" or "housecleaning" dismissal. Accordingly, the Court finds that the dismissal of plaintiff's state court action was an adjudication upon the merits under Michigan law. The pendency of an appeal, if any, generally does not alter the finality of a judgment for purposes of res judicata. *City of Troy v. Hershberger,* 27 Mich.App. 123, 127, 183 N.W.2d 430 (1970), *lv. to appeal denied,* 384 Mich. 806 (1971), *appeal dismissed,* 404 U.S. 804, 92 S.Ct. 94, 30 L.Ed.2d 36 (1971). *See also* Restatement (Second) of Judgments § 13, comment f (1982) ("The better view is that a judgment otherwise final remains so despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo").

### B. SAME MATTER IN ISSUE

■ The second element this Court must consider is whether this case involves the same matter in issue as the state court case. As noted above, Michigan applies a broad rule of res judicata which bars not only those claims actually litigated but also those claims arising out of the same transaction which plaintiff could have brought, but did not. *Gose,* 409 Mich. 147, 294 N.W.2d 165.[2] This transactional approach represents the modern view and is consistent with the test recently adopted in the Restatement

(Second) of Judgments § 24 (1982). *See Nilsen v. City of Moss Point, Miss.,* 701 F.2d 556, 560 n. 4 (5th Cir.1983) (en banc); *Poe v. John Deere Co.,* 695 F.2d 1103, 1106 (8th Cir.1982). The Sixth Circuit has recently reaffirmed its position that a § 1983 claimant is precluded by the doctrine of res judicata from relitigating not only the issues which were actually involved in a prior state proceeding, but also the issues which might have been presented. *Castorr v. Brundage,* 674 F.2d 531, 536 (1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 240, 74 L.Ed.2d 189.[3]

■ In this case the transaction which gave rise to the state suit was the obtaining of a search warrant and the forcible entry and inspection pursuant thereto. The same transaction is the basis of this suit in federal court, and the same issues concerning the constitutional validity of the warrant and search are present. Since both actions arose out of the same administrative search, both actions "arose out of the same transaction," both actions involved "point[s] which properly belonged to the subject of litigation," and both involved "the same matter in issue." *See Brownridge,* 115 Mich.App. at 748, 321 N.W.2d 798.

It is true that the relief sought here differs from the relief sought in the prior proceeding. In state court, plaintiff sought declaratory and injunctive relief directed to that particular incident; here, plaintiff

---

**2.** The Court notes that Michigan General Court Rule 203.1 has been interpreted to preclude application of the broad rule of res judicata where defendants fail to object to the splitting of causes of action at the first proceeding. *Rogers v. Colonial Federal Savings & Loan Ass'n,* 405 Mich. 607, 275 N.W.2d 499 (1979), *appeal dismissed,* 405 Mich. 637. The parties have not raised or addressed the issue of the applicability of this court rule, but the Court is of the opinion that the waiver provision does not apply here. The rule mitigates the harshness of a compulsory joinder provision with a waiver provision designed to encourage a defendant to assert an objection to plaintiff's nonjoinder in the first suit when the defect can be cured. *Rogers,* 405 Mich. at 624–25, 275 N.W.2d 499. In this case plaintiff attempted to join all its claims in one action and defendants opposed that attempt so the purposes of the rule have been met.

**3.** In *Allen* the Supreme Court noted:

A very few courts have suggested that the normal rules of claim preclusion should not apply in § 1983 suits in one peculiar circumstance: Where a § 1983 plaintiff seeks to litigate in federal court a federal issue which he could have raised but did not raise in an earlier state court suit against the same adverse party.

449 U.S. 90, 97 n. 10, 101 S.Ct. 411, 416 n. 10, 66 L.Ed.2d 308. It appears that the Supreme Court may address that issue in *Migra v. Warren City School District Board of Education,* No. C80–1183–y (N.D.Ohio. Feb. 17, 1981), *affirmed without opinion,* 703 F.2d 564 (6th Cir. 1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 722, 74 L.Ed.2d 948 (1983).

seeks money damages as well as declaratory and injunctive relief against an alleged pattern and practice of unconstitutional behavior. However, this distinction is immaterial, inasmuch as the two cases still involve "the same matter in issue." A similar situation was presented in *Southern Jam, Inc. v. Robinson,* 675 F.2d 94 (5th Cir.1982). In that case Southern Jam had raised a constitutional challenge to a county resolution in defense of an enforcement proceeding in state court brought by the commission which adopted the resolution. Southern Jam later sued the commission in federal court for money damages under § 1983. A dismissal on the basis of res judicata was affirmed, because applicable Georgia law required the bringing of all claims arising out of the same transaction or occurrence, and the relief sought in federal court "arose from the very occurrence which led to the state court proceedings." A similar result should obtain here, where applicable Michigan law requires the bringing of all "claims arising out of the same transaction."

▋ Plaintiff in effect argues that it is not fair to say that it "could have brought" in state court those claims which it attempted to raise in its proposed first amended complaint, because plaintiff was denied leave to amend. The Court is of the opinion that the merit to this argument depends on the reason for which leave was denied. For example, the argument would appear to have merit where leave to amend was denied on the basis that the court had no jurisdiction to decide the claims sought to be added; in such a case it would not be true that such claims "could have been brought" and decided on the merits in the original action. On the other hand, where the denial is made on the basis of the futility of the amendment, it is in effect a determination that the claims are legally insufficient and therefore one that is entitled to res judicata impact. *See Martin v. Michigan Consolidated Gas Co.,* 114 Mich.App. 380, 319 N.W.2d 352 (1982).

▋ In this case leave to amend was denied because Judge Mullen had concerns "with regard to delay, with regard to problems of jurisdiction, with diversity of defendants and the unfairness to the Defend-

ant to allow an amended complaint to be filed at this late date." The judge noted the year and a half which passed before plaintiff took two depositions which allegedly provided the foundation for a request for money damages, and the four months which subsequently passed before the request to amend was made. He was of the opinion that the matters "could have been discovered at least possibly much, much before January 6th of 1981." He apparently felt, and rightly so, that there was a problem with one attorney representing all the defendants if the case were to involve damage claims. This concern would appear to be an element of prejudice to the defendants. The judge's passing reference to jurisdictional problems does not make clear the nature of his concern, but it is clear that state courts have concurrent jurisdiction with federal courts over § 1983 claims. *Long v. District of Columbia,* 469 F.2d 927 (D.C.Cir.1972). Upon review of the transcript of the ruling and the docket sheet in the state court case, this Court is of the opinion that the gist of the ruling denying leave to amend was that plaintiff was chargeable with a "considerable amount of delay" which if the amendment were allowed would cause prejudice to the defendants.

Given this rationale for the denial of leave to amend, it should still be concluded that plaintiff's claims "could have been brought" in the earlier action if only they had been pursued in a timely fashion. This issue was recently addressed in *Nilsen,* 701 F.2d at 563, as follows:

Here it was not the procedural system of the forum that precluded the joinder of all Ms. Nilsen's asserted remedies in one proceeding. Instead, as we have bindingly held, it was her own "unexplained dilatoriness." The system itself was, in and of its nature, ready and able to accommodate all such claims, if timely made, and obliged to entertain them: had the § 1983 theory been so advanced, the court would have had no choice but to adjudicate it. Instead, it was Ms. Nilsen who split her claim or "cause of action," reserving one basis or legal theory sup-

portive of it until it was untimely and need not be adjudicated. That this § 1983 theory was untimely advanced and thus properly rejected is an issue that has already, and rightly or wrongly, been finally settled in the former appeal and is not open to reexamination today.

In these circumstances, both courts and commentators agree that theories which were the subject of an untimely motion to amend, filed in the earlier action, "could have been brought" there.

*Accord, Poe v. John Deere Co.,* 695 F.2d 1103 (8th Cir.1982).[4]

To hold otherwise would undercut the rationale of Judge Mullen's ruling, for plaintiff's lack of diligence, and the resulting prejudice to defendants, would only mean that plaintiff need undergo the relatively minor inconvenience of commencing another action. As the *Nilsen* court observed:

> We have already bindingly held that it would have been improper and prejudicial to the city to permit Ms. Nilsen to add that theory tardily to *Nilsen II/III.* That victory would be rendered a hollow one indeed were we now to determine that the proper consequence of her tardiness is the creation by us of a new exception to settled doctrines of claim preclusion to accommodate that tardiness, one authorizing an even tardier lawsuit. We decline to do so. (footnote omitted)

701 F.2d at 564. As suggested above, plaintiff's remedy for any improper denial of leave to amend is an appeal.

Accordingly, the Court holds that the claims in this action arose out of the same transaction that was the subject of the state court action, and that such claims could have been brought in that earlier action. In other words, there is "the same matter in issue" in both proceedings.

## C. SAME PARTIES OR THEIR PRIVIES

The final element this Court must consider is whether the two actions are between the same parties or their privies. The following parties are the same in both actions: the Bureau of Safety and Regulation of the Michigan Department of Labor, C. Patrick Babcock, Robert Burns, Richard Davis, George Cheyne, and Richard Sorrentino.[5] There are three other individuals in this action who were not parties to the former suit: William Sebring, Ronald Knittel, and Kenneth Colby.[6] The latter two are deputy sheriffs who argue that they should be considered privies of parties for purposes of res judicata. They contend that the sheriff's interest in the warrant and his duties thereunder were coterminous with the interests and duties of his deputies. They note that both the sheriff, their superior, and deputy sheriff Sorrentino, their subordinate, were parties to both actions. In support they cite two cases in which officers of corporations were treated as privies of their corporations for purposes of res judicata.

 The Court is not persuaded that the deputy sheriffs are privies of parties under Michigan law for purposes of res judicata. *See Oxford v. Berry,* 204 Mich. 197, 170 N.W. 83 (1918) (prior habeas corpus proceeding against sheriff not res judicata as to deputy sheriff in later action for dam-

---

**4.** The Fifth Circuit's en banc opinion in *Nilsen* went on to draw a parallel to the case of *Harrington v. Vandalia-Butler Board of Education,* 649 F.2d 434 (6th Cir.1981), where a § 1983 suit was held barred by a prior Title VII action based on the same injury, as follows:

> Ms. Harrington elected not to advance her § 1983 claim until after judgment, too late for it to be considered in the original action. Ms. Nilsen likewise elected not to advance hers until, as is finally settled, it was presented too tardily to be considered in *Nilsen II/III.* We see no distinction redounding to Ms. Nilsen's benefit between the two "elections;" each resulted in a withholding of the

§ 1983 theory until it would have been improper to consider it in the earlier action. Both claims were properly held barred, since in each case the procedural system offered a full and fair opportunity for litigation of the § 1983 theory had it been timely presented. 701 F.2d at 564.

**5.** Clyde Graven was also a party to both actions, but summary judgment has previously been granted in his favor.

**6.** A fourth individual in this category was previously dismissed by stipulation of the parties.

ages for false imprisonment). In *Howell v. Vito's Trucking Co.,* 386 Mich. 37, 43, 191 N.W.2d 313 (1971), the Michigan Supreme Court quoted the following definition: "A privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." The concept of privity has generally been applied to persons who in the eyes of the law "stand in the shoes" of another with respect to their relationship to the subject matter of the suit, e.g., assignor and assignee, executor and testator, master and servant, guardian and ward, trustee in bankruptcy and bankrupt, or indemnitor and indemnitee. *See* Michigan Law and Practice, Judgment §§ 265–72 (1957 & Supp.1982). The deputy sheriffs argue that their relationship to the sheriff is one of principal and agent, but that argument lacks persuasiveness in the context of this lawsuit, where the sheriff has been granted summary judgment because at the time he had no knowledge of the issuance or execution of the warrant and the ensuing search. Thus, this Court has at least implicitly found that unlike agents, the deputies were not acting subject to the control of the sheriff with respect to their acts in executing the warrant.

 It is also argued by the deputies that collateral estoppel is appropriate here. The Court disagrees for a number of reasons. The general understanding of collateral estoppel is that it applies only to decisions on issues of law or fact *necessary* to the judgment. *Allen,* 449 U.S. at 94, 101 S.Ct. at 414. In this case no decisions on any issues framed by the pleadings were necessary to the dismissal for lack of progress. Collateral estoppel has been described in the Michigan courts as the doctrine which "will bar the relitigation of issues previously decided in the first action when the parties to the second action are the same; where the second suit is a different cause of action, the bar is conclusive only as to issues actually litigated in the first suit." *Braxton v. Litchalk,* 55 Mich.

App. 708, 223 N.W.2d 316 (1974). In this case the identity of the parties to the two suits has already been discussed; to the extent any issues were "actually litigated" in the first suit they were only decided on a preliminary basis against the parties seeking to invoke estoppel. Michigan still adheres to the requirement of mutuality of estoppel. *Howell,* 386 Mich. at 46–52, 191 N.W.2d 313. This is not a case of derivative responsibility as was *Braxton,* a case urged upon the Court.

In short, the defendants other than Sebring, Knittel, and Colby have established that a Michigan court would consider the prior judgment to have been "rendered upon the merits, upon the same matter in issue, and between the same parties or their privies." The Court concludes that there is no genuine issue as to any fact material to the defense of res judicata, and that such defendants have met their burden of establishing that they are entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Accordingly, the motion for summary judgment on the basis of res judicata is granted as to defendants Bureau of Safety and Regulation, Babcock, Burns, Davis, Cheyne, and Sorrentino on all counts.[7]

This result may seem harsh but it must be remembered that the fact that plaintiff never actually litigated the merits of some of its claims against these defendants is due to plaintiff's own lack of diligence, not a denial of a full and fair opportunity to do so. As the Supreme Court has noted, the principles of res judicata serve the salutary purpose of relieving parties of the cost and vexation of multiple lawsuits, conserving judicial resources, encouraging reliance on adjudication, and in this context, promoting the comity between state and federal courts that has been recognized as a bulwark of the federal system. *Allen,* 449 U.S. at 94–96, 101 S.Ct. at 414–15.

## II. QUALIFIED IMMUNITY

The next motion the Court will address is the deputy sheriffs' motion for summary

---

**7.** This result renders unnecessary any consideration of Deputy Sorrentino's alternative motion for summary judgment.

judgment as to Counts I, II, and III of the complaint. Count I is the claim under § 1983. Plaintiff contends that the warrant was invalid, that the deputies should have ascertained its invalidity, and that their failure to do so subjected plaintiff to a warrantless administrative search in violation of the Fourth Amendment as interpreted in *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). The deputies argue, among other things, that they are entitled to qualified good-faith immunity.

The Supreme Court has recently refined the limits of qualified good-faith immunity, holding that government officials are shielded from liability for damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This issue can appropriately be decided on a motion for summary judgment. *Harlow; Hall v. United States,* 704 F.2d 246 at 250 (6th Cir.1983), *citing Harlow.*

Plaintiff argues that the search warrant was invalid because the affidavit which supported the finding of probable cause expressed by the warrant contained statements of which the affiant had no personal knowledge. However, it is undisputed that the deputies had no part in or knowledge of the proceedings leading to the issuance of the warrant. Plaintiff also asserts that the warrant was invalid on its face. Its argument to support that claim is that the attached affidavit describes an inspection scheme covering employers who have not received a general inspection for at least ten months prior to the date of assignment, and that the affidavit then goes on to say that the date of plaintiff's last general inspection is "unknown."

The Court is not of the opinion that the deputies were obliged to discover and pronounce judgment upon such an asserted defect. The warrant was regular on its face and embodied a decision by a neutral magistrate which, rightly or wrongly, held that there was probable cause for the search. The sheriff and his deputies were obligated as "officers of the court" to execute the warrant directed to them. M.C.L.A. § 600.582. As stated in *Turner v. Raynes,* 611 F.2d 92, 93 (5th Cir.1980), *cert. denied,* 449 U.S. 900, 101 S.Ct. 269, 66 L.Ed.2d 129:

> It is familiar law that persons such as Sheriff Jones enjoy a qualified immunity from suit for official actions taken in good faith. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bryan v. Jones,* 530 F.2d 1210 (5th Cir. 1976) (en banc). "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, [or, as here, a warrant] and being mulcted in damages if he does." *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). It would be a strange and unworkable rule that required a sheriff, at his peril, to determine the ultimate legal validity of every warrant—regular on its face and issued by proper authority—before serving it.

*Accord, Link v. Greyhound Corp.,* 288 F.Supp. 898, 901 (E.D.Mich.1968). *See also Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). ("A reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers—all of whom may be potential defendants in a § 1983 action—is entirely consistent with 'due process of law' ")

Moreover, Sergeant Knittel conferred with MIOSHA officials, with the issuing Judge, and with the Prosecuting Attorney's Office regarding the validity of the warrant. He was advised by the Judge and the Prosecutor that the warrant was valid and he had no choice but to execute it; he was advised by MIOSHA that the Attorney General had reviewed the matter and had ordered the inspection. In these circumstances, as in *Jihaad v. O'Brien,* 645 F.2d 556 (6th Cir.1981), where a prison official had consulted counsel and a chaplain concerning a prisoner's asserted right to wear a

beard on religious grounds, "the indicia of good faith are abundant."

 Plaintiff's pleadings can also be fairly read as asserting that the manner in which the warrant was executed, and not just the fact of execution, violated plaintiff's constitutional rights. The first particular claim in this respect is that a forcible entry was employed. However, the deputies were acting pursuant to M.C.L.A. § 780.656, which specifically authorizes the breaking of doors and windows in order to execute warrants if, after notice of his authority and purpose, the officer is refused admittance. Actions authorized by an unchallenged statute can certainly be said to be taken in objective good faith.

 The second particular claim relates to an alleged intimidating "show of force" in the number of officers present on the scene. However, the unrefuted affidavit of Sergeant Knittel, the deputy in command at the scene, establishes that there was good reason to believe forcible entry would be necessary and that it would be met with resistance and hostility, the nature and extent of which was unknown. Thus, there was a reasonable and good-faith belief that more than one or two law enforcement officers might be necessary.

 Another particular claim with respect to the manner of execution of the warrant is that deputy Colby prevented an employee from re-entering the plant during the inspection. Colby's deposition indicates that the reason for doing so was because that particular employee appeared to be interfering with the inspection and he seemed to be the nucleus of the hostility, and because Colby was concerned with maintaining the integrity of whatever evidence was being sought by the inspecting

officials. Once again, the objective reasonableness of the deputies' conduct is apparent.

In none of these particulars has plaintiff pointed to any clearly established law which the deputies are alleged to have violated. Plaintiff relies on the *Marshall* standard for the issuance of an administrative search warrant,[8] which makes no clearly established law concerning the execution of such warrants, if indeed distinctions should be drawn between the execution of administrative search warrants and other warrants. The Court concludes that the conduct of deputies Knittel and Colby did not violate any clearly established statutory or constitutional rights of which a reasonable person would have known. Based on their qualified immunity from damages, deputies Knittel and Colby are entitled to summary judgment as a matter of law on the § 1983 claim asserted against them in Count I.

### III. PENDENT CLAIMS

 As to the pendent claims for abuse of process and trespass stated in Counts II and III, the Court finds that the deputies are also entitled to summary judgment as to those claims. A claim for abuse of process requires the plaintiff to plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding. *Freidman v. Dozorc*, 412 Mich. 1, 312 N.W.2d 585 (1981). There is no evidence of an ulterior motive on the part of the deputies in executing the warrant, and the undisputed facts show that as far as the deputies were concerned the process was merely used for the purpose for which it was intended—to authorize an administrative inspection.

---

**8.** The Court stated in *Marshall:*

> For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment]." *Camara v. Municipal Court,* 387 U.S. at 538, 87 S.Ct. at 1736. A warrant showing that a

> specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights. [footnotes omitted]

436 U.S. at 320–21, 98 S.Ct. at 1824.

 The claim for trespass which assumes that the warrant was in fact invalid is analogous to a claim for false arrest under an invalid warrant. Michigan law holds that process which is fair upon its face is sufficient to protect an officer who arrests a person named in the warrant from a claim for false arrest or false imprisonment, even if the warrant is held to be invalid. *Brown v. Hadwin,* 182 Mich. 491, 148 N.W. 693 (1914); *Bridgman v. Bunker,* 12 Mich.App. 44, 162 N.W.2d 310 (1968). Under the principles of those cases, the Court finds that the deputies were protected by process which was legal in form and issued by a court with authority to do so from liability for any unlawful entering upon plaintiff's premises. Accordingly, summary judgment is granted defendants Knittel and Colby as to Counts II and III.

## IV. ELEVENTH AMENDMENT

 The next motion the Court will address is the state defendants' motion for summary judgment, which raises the question of Eleventh Amendment immunity. As to defendant Sebring, the only remaining state defendant, the motion lacks merit in that he is sued for damages only in his individual capacity. Thus, there is no problem here of an award of retrospective monetary relief to be paid from the state treasury. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

## V. § 1985(3)

 As to Count IV, alleging a violation of 42 U.S.C. § 1985(3), all the defendants have moved for summary judgment for failure to state a claim upon which relief can be granted. The Court finds that these motions have merit in that plaintiff has failed to allege any class-based invidiously discriminatory animus. *See Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Ohio Inns, Inc. v. Nye,* 542 F.2d 673 (6th Cir.1976); *Smith v. Gibson,* 524 F.Supp. 664 (E.D.Mich.1981).

## VI. ATTORNEY FEES

In connection with an earlier grant of summary judgment to Sheriff Graven, that defendant has moved for an award of attorney fees pursuant to 42 U.S.C. § 1988. The standard for such an award to a defendant was established in *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). In that case the Court adopted its holding as to Title VII in *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), that the defendant may recover attorney's fees only if the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." The Court in *Christiansburg* cautioned that a district court should not "engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." 434 U.S. at 421–22, 98 S.Ct. at 700.

 In this case the Court agrees with plaintiff that it was not unreasonable to believe at the time of the filing of the complaint that Sheriff Graven was involved in the incident complained of. The warrant on which the search was based was directed to the Sheriff, and the Sheriff's deputies were the guiding law enforcement officers during the execution of the warrant and the inspection. Plaintiff knew that a deputy sheriff had been to the plant earlier in the day and after being refused entry, left until the larger force arrived in the afternoon. It was reasonable to assume that the deputy had sought direction in the interval from his superior, the Sheriff. Given the involvement of several deputies, it was not frivolous to name the head of the sheriff's department as a defendant. Although Sheriff Graven contends that plaintiff should have known his lack of involvement by virtue of the state court suit, the only discovery in that case was two depositions which were not probative of the Sheriff's participation in the incident. Even defense counsel stated in the brief in support of the motion for summary judgment on behalf of Sheriff Graven: "Plaintiff's counsel may have reasonably believed that the Sheriff's Deputies acted pursuant to the orders of the Sheriff and under his supervision . . . ."

This is not a claim which can be considered "contrived, frivolous, unreasonable, and without foundation" as was the attempt to assert probate jurisdiction in *Tonti v. Petropoulous,* 656 F.2d 212 (6th Cir.1981). This case is more akin to the situation in *Jeffries v. City of Chicago,* 540 F.Supp. 1371 (N.D.Ill.1982), a suit for unlawful arrest, where plaintiff was unaware of the identity of the officers involved in the arrest but sued officers known to be involved in the earlier investigation. As the court there stated, "Once a plaintiff has demonstrated, as here, a rational basis for believing that a particular individual may have been involved in the incident involved in a complaint, this Court will not award attorney's fees simply because that belief proves incorrect." This Court agrees.

## VII. DISCOVERY

Finally, there is a discovery dispute pending. Plaintiff desires to take the deposition of James D. Mueller, an assistant attorney general, with respect to some documents which have been provided, and generally with respect to why the state officials chose to proceed by way of a forcible entry rather than by way of show cause and contempt proceedings. Defendants object on the basis of the attorney-client privilege.

Fed.R.Civ.P. 26(b)(1) provides that any matter which is relevant and not privileged is discoverable. It appears that plaintiff is seeking relevant information. The Court is not in a position to rule on the objection until raised in response to specific questions. Accordingly, plaintiff's motion to compel the deposition of Mr. Mueller is granted, and the motion for protective order is denied, without prejudice to Mr. Mueller's right to object to any questions touching on matters properly within the scope of an applicable privilege.

In sum, for the reasons stated, the motion for summary judgment on the basis of res judicata is granted as to all defendants other than Sebring, Knittel, and Colby; the motion for summary judgment on Counts I, II, and III is granted as to Knittel and Colby; the motion for summary judgment on Count IV is granted as to all defendants; the motion for attorney fees is denied; and

the motion to compel the taking of a deposition is granted.