Leslie G. CRAWFORD, Plaintiff,

v.

Rae Lee CHABOT, Laurence B. Deitch; Peter H. Ellsworth, Peter F. Secchia, members of the Michigan Civil Service Commission; Mary Pollock, state Affirmative Action Officer; Kenneth L. McGinnis, Director of the Michigan Department of Corrections; and Louella Burke, Warden of the Saginaw Correctional Facility, Defendants.

No. 5:97–CV–190.

United States District Court,
W.D. Michigan,
Southern Division.

Feb. 26, 1998.

Charles J. Porter, Clarkston, MI, for plaintiff.

Joseph E. Potchen, Frank J. Kelley, Attorney General, Lansing, MI, for defendants.

## OPINION OF THE COURT

McKEAGUE, District Judge.

Now before the Court is defendants' motion to dismiss or for summary judgment. Plaintiff's complaint alleges that the Michigan Department of Corrections ("DOC") improperly denied plaintiff's application for a sergeant position based on his race. In particular, plaintiff contends that the DOC relied on an unconstitutional affirmative action policy to deny his request for a lateral transfer. Defendants argue that plaintiff's claims are barred by res judicata and that, in the alternative, plaintiff lacks standing, the claims are moot, or the Court should abstain from hearing the matter. The Court has carefully considered the parties' arguments as set forth in their briefs and at the hearing and, for the reasons that follow, defendants' motion for summary judgment is granted.

## I. FACTUAL BACKGROUND

Plaintiff began working for the DOC on February 9, 1987. In the spring of 1994, plaintiff was employed as a sergeant at the Gus Harrison Correctional Facility in Adrian, Michigan. At that time, plaintiff sought a lateral transfer by applying for one of eleven open sergeant positions at the Saginaw Correctional Facility. As part of the hiring process, plaintiff took a Department of Civil Services written examination. All prospective applicants for a supervisory position such as the sergeant position for which plaintiff applied are required to take the exam. Plaintiff scored between 90 and 100 on the exam, which placed him in "band 1" under the DOC's hiring criteria. The DOC did not hire plaintiff, who is white, for one of the open positions. Among those selected for the positions were seven black applicants, six of whom scored between 80 and 90 on the exam, placing them in "band 2." At the time of this hiring process, the DOC employed an affirmative action policy, which included use of an "augmented certification" rule. Al-though the DOC historically hired only job applicants who scored in band 1 on the exam, the augmented certification rule permitted the DOC to hire black applicants who scored in band 2.

Plaintiff filed a grievance with the Employment Relations Board of the Department of Civil Service. At the grievance hearing, the DOC argued that it had not selected plaintiff for one of the sergeant positions because of a co-worker's negative assessment of him. The hearing officer ruled that the DOC had improperly relied upon the co-worker's evaluation and ordered the DOC to make a determination as to whether plaintiff should be offered a sergeant position at the Saginaw facility based on his test scores and an appropriate review of his references. The Civil Service Commission affirmed the Employment Relation Board's decision.

As a result of the grievance hearing officer's ruling, the DOC considered plaintiff in a selection process for three open sergeant positions at the Saginaw facility in January 1995. Plaintiff was not given an interview in this hiring process. Two of the applicants hired for the open sergeant positions were black and, according to plaintiff, would not have been hired in the absence of augmented certification.

In June 1996, plaintiff filed suit in the Saginaw County Circuit Court (Docket No. 96–1406–CZ–1), challenging the DOC's affirmative action policy and its failure to hire him as a sergeant at the Saginaw facility. In April 1997, plaintiff file a three-count amended complaint in the state court naming as defendants the Michigan Department of Civil Service, the Michigan DOC, and the same state officials named in this federal action with the exception of defendants Pollock and Burke. Suing under 42 U.S.C. § 1983, the Michigan Constitution, and the Michigan Elliott–Larsen Civil Rights Act, plaintiff sought injunctive relief in the form of a declaratory judgment declaring the DOC affirmative action policy unconstitutional and placement of plaintiff in a shift supervisor position at the Saginaw facility. On August 12, 1997, Judge Patrick M. Meter issued an opinion and order granting defendants' motion for sum-

mary disposition. Plaintiff has appealed this ruling to the Michigan Court of Appeals.

In September 1997, plaintiff filed the present action in this Court. In his federal complaint, plaintiff has asserted claims under 42 U.S.C. § 1981 and § 1983, seeking the same injunctive relief sought in the state court. Also in September 1997, the Michigan Department of Civil Service issued an Advisory Bulletin rescinding the regulation authorizing augmented certification.

## II. ANALYSIS

Defendants' motion for summary judgment requires the Court to look beyond the pleadings and evaluate the facts to determine whether there is a genuine issue of material fact that warrants a trial. Fed.R.Civ.P. 56(c). *See generally Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact concerns "material" facts only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *See id.* A complete failure of proof concerning an essential element of plaintiff's case necessarily renders all other facts immaterial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Production of a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *See Liberty Lobby*, 477 U.S. at 251, 106 S.Ct. 2505. Moreover, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Ind. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Defendants argue that this action is barred by the doctrine of res judicata because plaintiff brought the same or similar claims against essentially the same parties in state court. Plaintiff argues that res judicata does not bar his claims because: (1) the state court judgment is on appeal and therefore is not final; (2) the claims in this federal case are not the same as those in his state case;

and (3) he has named two additional individual defendants in this case.

"The Full Faith and Credit Clause, U.S. Const., Art. IV, § 1, as implemented by the federal full faith and credit statute, 28 U.S.C. § 1738, requires federal courts to give preclusive effect to state court judgments." *Katt v. Dykhouse*, 983 F.2d 690, 693 (6th Cir.1992); *see generally* Moore's Federal Practice 3d § 133.30. Additionally, "[t]he Supreme Court has repeatedly held that § 1738 requires a federal court to give the same effect to a state court judgment that would be given by a court of the state from which the judgment emerged." *Katt*, 983 F.2d at 693 (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), and *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). Accordingly, in this case, Michigan law governs the preclusive effect of plaintiff's prior state court action.

■ Like most other jurisdictions, Michigan courts give preclusive effect to prior judgments when: (1) the prior action was decided on its merits; (2) the issues raised in the second case were resolved in the prior action; and (3) both actions involved the same parties or those in privity with them. *See King v. Michigan Consol. Gas Co.*, 177 Mich.App. 531, 535, 442 N.W.2d 714, 716 (1989). Further, "Michigan courts follow a broad application of res judicata to bar not only claims identical to those already litigated but also 'claims arising out of the same transaction which plaintiff could have brought but did not.'" *Katt*, 983 F.2d at 693 (quoting *Gose v. Monroe Auto Equip. Co.*, 409 Mich. 147, 294 N.W.2d 165, 167 (1980)). "The test for determining whether two claims arise out of the same transaction and are identical for res judicata purposes is whether the same facts or evidence are essential to the maintenance of the two actions." *Jones v. State Farm Ins. Co.*, 202 Mich.App. 393, 401, 509 N.W.2d 829, 834 (1993).

■ Implicit in the application of res judicata is a requirement that the prior judgment be final. *See generally* Moore's Federal Practice 3d, § 131.30. Plaintiff argues in

this case that the prior state court judgment is not final because it is on appeal. However, "[t]he rule in Michigan is that a judgment pending on appeal is deemed res judicata." *City of Troy Bldg. Inspector v. Hershberger*, 27 Mich.App. 123, 127, 183 N.W.2d 430, 433 (1970) (citing 14 Michigan Law & Practice Judgment, s. 176, p. 620); *see also Temple v. Kelel Distrib. Co., Inc.*, 183 Mich.App. 326, 328, 454 N.W.2d 610, 611 (1990); *Eisfelder v. Michigan Dept. of Natural Resources*, 847 F.Supp. 78, 83 (W.D.Mich.1993) ("It is...clear under Michigan law that the fact an appeal is pending does not affect an order's finality."); *Eliason Corp. v. Bureau of Saf. & Reg. of Mich.*, 564 F.Supp. 1298, 1302 (W.D.Mich.1983) ("The pendency of an appeal, if any, generally does not alter the finality of a judgment for purposes of res judicata.").

Plaintiff argues that *Hershberger* is an anomaly in Michigan law and that the other cases cited above mistakenly rely upon it. However, plaintiff fails to cite persuasive authority for his assertion that a trial court judgment pending appeal is not final for res judicata purposes. While plaintiff cites several cases that state in *dicta* that res judicata attaches when all available courses of appeal have been exhausted, the Court has been unable to locate a Michigan case holding that a trial court judgment pending appeal is not considered final for res judicata purposes. In *Strachan v. Mutual Aid Club*, 81 Mich. App. 165, 265 N.W.2d 66 (1978), *rev'd on other grounds*, 407 Mich. 928, 285 N.W.2d 297 (1979), the court stated, "[t]he doctrine of res judicata becomes applicable when an adjudicatory proceeding on a contested issue has progressed to a final determination, and all available courses of appeal have been exhausted or not pursued within the prescribed time limitations." *Id.* at 169, 265 N.W.2d at 68. The *Strachan* court held, however, that res judicata *did* bar the plaintiff's claims because she had already litigated the same claims before the Michigan Civil Rights Commission. The plaintiff had failed to seek administrative review of the Commission's decision. In holding the plaintiff's claims barred, the *Strachan* court merely noted that the decision could be considered "final" despite the plaintiff's failure to appeal

the Commission's ruling. Plaintiff also cites *Annabel v. C.J. Link Lumber Co.*, 115 Mich. App. 116, 320 N.W.2d 64 (1982), *rev'd on other grounds*, 417 Mich. 950, 331 N.W.2d 900 (1983), which did not involve an issue of finality.

Similarly, although the court in *Cantwell v. City of Southfield*, 105 Mich.App. 425, 306 N.W.2d 538 (1981), stated that a judgment is final "when all available appeals have been exhausted," the court held that the plaintiff's claim was barred by res judicata. In *Cantwell*, the plaintiff had challenged both the validity of the civil service exam and the constitution of the Civil Service Commission after he was denied a promotion to police sergeant. *See id.* at 426–27, 306 N.W.2d at 540. The trial court held that the test was valid, but that the commission was illegally constituted at the time the plaintiff's promotion was denied. *See id.* at 427, 306 N.W.2d at 539. The Michigan Court of Appeals reversed the trial court's ruling, finding that the commission was legally constituted at all relevant times, and remanded the action. *See id.* at 427–28, 306 N.W.2d at 539–40. On remand, the trial court found that the exam was invalid. *See id.* at 428, 306 N.W.2d at 540. On appeal from this ruling, the appellate court held that plaintiff's claim as to the validity of the civil service exam was barred by res judicata because the trial court had previously ruled that the test was valid. *See id.* at 429–30, 306 N.W.2d at 540–41. The *Cantwell* court noted that the plaintiff had failed to appeal that aspect of the trial court's ruling and that, therefore, res judicata attached to the judgment. *See id.*, 306 N.W.2d at 540–41.

Although Michigan case law appears to contain conflicting statements on the issue of finality, the Court finds that the cases holding that a trial court judgment pending appeal is "final" for res judicata purposes are better-reasoned and in accord with the prevailing view in the majority of jurisdictions. *See* Restatement (Second) of Judgments § 13, comment f (1982) ("The better view is that a judgment otherwise final remains so despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo."); *see also* Moore's Federal Practice

3d, § 131.30[2][c] (noting that most states follow the federal approach, that a prior judgment "can be considered the basis for claim preclusion despite the fact that an appeal is pending, or that judgment may be subject to appeal in the future."). Moreover, from a policy perspective, it makes little sense to postpone attachment of res judicata until all appeals have been exhausted. The purpose of the res judicata doctrine is to avoid repetitive litigation and the problem of inconsistent results. If a judgment is not considered final for res judicata purposes when an appeal is pending, then a plaintiff may file successive claims in multiple jurisdictions during the pendency of the appeal. This would result in exactly the kind of piecemeal litigation that res judicata is designed to guard against. Accordingly, the Court finds that the state court judgment in this case is final for res judicata purposes, despite the pendency of an appeal from that judgment.

■ Plaintiff's claims under both § 1983 and § 1981 against the same defendant officials named in the state court action are barred by res judicata. Although plaintiff argues that this action is not barred because he has added the § 1981 claim against those same defendants, the § 1981 claim is barred because it clearly could have been brought in the state case and it arose out of the same transaction or occurrence. Plaintiff also argues that his state court action did not involve "subsequent discriminatory conduct in January, 1995," and therefore that his claims against the same defendants are not barred. At the hearing, plaintiff's counsel clarified that this "subsequent conduct" referred to the DOC's decision not to hire plaintiff for one of the three open sergeant positions at the Saginaw facility in the January 1995 hiring process. Because plaintiff was included in this second hiring process only as a result of

the grievance hearing officer's ruling on the earlier Spring 1994 incident, this claim arises out of the same transaction or occurrence or the same series of transactions or occurrences and thus it is barred by res judicata.[1]

■ The only remaining question is whether plaintiff's claims against the two new defendants (Mary Pollock and Louella Burke) are also barred by res judicata. As stated above, res judicata only operates to bar claims previously litigated in a suit against the same parties or those in privity with them. Plaintiff's claims against these new defendants are barred by res judicata because both Pollock and Burke are parties in privity with the defendant officials and the state agencies that were sued in the prior state action.

A government official sued in his or her official capacity is considered to be in privity with the government. Therefore, a judgment for or against an official will preclude a subsequent action on the same claim by or against another official or agency of the same government. Similarly, a prior judgment involving the government will bar an action against individual officials of the government in their official capacity for the same claim.

Moore's Federal Practice 3d, § 131.40[3][e][ii] (citing *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir.1988); *Schuster v. Martin*, 861 F.2d 1369, 1373 (5th Cir.1988); *Conner v. Reinhard*, 847 F.2d 384, 394 (7th Cir.1988); *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir.1984)). Although there appear to be no Michigan cases directly addressing this issue, Michigan law certainly bars subsequent actions against parties in privity with those in a prior suit involving the same claims. *See, e.g., Wildfong v. Fireman's Fund Ins. Co.*, 181 Mich.App. 110, 113–14, 448 N.W.2d 722, 723–24 (1989). Defendants'

---

1. At the hearing, plaintiff's counsel suggested that he was unaware of essential facts relating to the January 1995 failure to interview and thus it was not possible to include these subsequent allegations in the original state court filing. Putting aside the question whether plaintiff could have amended his complaint to include the January 1995 failure to interview, this subsequent conduct is part and parcel of the earlier incidents forming the basis of plaintiff's complaint in state

court. The DOC was directed by the grievance hearing officer to make a determination whether plaintiff should be offered the sergeant position based on his test scores and references. As such, the subsequent reconsideration of plaintiff in January 1995 was a mere outgrowth of the earlier Spring 1994 decision not to hire plaintiff (which was the subject of plaintiff's state court action).

assertion that the claims against the new parties are barred because they could have been brought against them in the prior action is incorrect because such a rationale does not circumvent the "same parties" requirement. Nevertheless, the claims are barred because both Pollock and Burke are parties "in privity" with the defendant officials involved in the prior state action and with the state agencies named as defendants in the prior state case.

Finally, plaintiff argues that even if his claim would ordinarily be barred by res judicata, the Court should not give preclusive effect to the state court judgment because "[i]n this case we are dealing with a rare, exceptional event where a state court, dealing with a federal claim, utterly thumbs its nose to binding decisions of the United States Supreme Court." Plaintiff's Br. at 11. This argument is without merit for several reasons. First, plaintiff is simply incorrect in repeatedly characterizing the state court judgment in this case as directly contrary to Supreme Court precedent. The state court issued a lengthy and thorough opinion that addressed the constitutionality of the DOC affirmative action plan.[2] This is simply not a case where the state court has demonstrated an inability or unwillingness to protect federal rights.[3]

■ Second, to the extent that plaintiff challenges the state court judgment because he disagrees with its outcome, plaintiff's claims are barred by the *Rooker–Feldman* doctrine. The *Rooker–Feldman* doctrine, "a combination of the abstention and res judicata doctrines, stands for the proposition that a federal district court may not hear an appeal of a case already litigated in state court." *United States v. Owens,* 54 F.3d 271, 273 (6th Cir.1995) (citing *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), and *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)). In general, a federal district court "must apply the *Rooker–Feldman* doctrine to dismiss cases for lack of jurisdiction where: (1) the party against whom the doctrine is being applied had the opportunity to raise the issues pending before the federal court in the instant case, or those inextricably intertwined therewith, in a prior state court proceeding; and (2) these issues, or those inextricably intertwined therewith, were adjudicated in the prior state court proceeding." *Community Treatment Ctrs., Inc. v. City of Westland,* 970 F.Supp. 1197, 1214 (E.D.Mich.1997).

■ Plaintiff attempts to evade application of the *Rooker–Feldman* doctrine by arguing that he challenges the actions of the DOC, not the state court's decision. For the reasons previously discussed, plaintiff's claims are barred by res judicata. To the extent that plaintiff urges the Court to disregard

---

2. The state court noted that the DOC affirmative action plan was constitutional, relying in part on a recent Sixth Circuit analysis of relevant Supreme Court cases. *See Crawford v. Chabot, et al.,* No. 96–14806–CZ–1, at 5 (Saginaw Cty. Cir. Ct. Aug. 12, 1997) (Meter, J.) (citing *Conlin v. Blanchard,* 947 F.2d 944 (6th Cir.1991)). However, the state court did not need to reach the constitutional issue underlying plaintiff's § 1983 claim because it ruled against plaintiff on standing and mootness grounds. *See id.* at 5–7.

3. In arguing that the state court judgment in this case is not entitled to preclusive effect, plaintiff relies chiefly on *Haring v. Prosise,* 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983). In *Haring,* the Court held that Virginia collateral estoppel rules did not require a federal court to give preclusive effect to a conviction based on a guilty plea in a subsequent § 1983 suit challenging the legality of a search. *See id.* at 323. *Haring* is inapposite to this case for several reasons. First, the Court states only in *dictum* that "exceptions to collateral estoppel may be warranted in § 1983 actions in light of the 'understanding of § 1983' that 'the federal courts could step in where the state courts were unable or unwilling to protect federal rights.'" *Id.* at 313–14, 103 S.Ct. 2368 (citations omitted). The Court articulated three separate reasons justifying its conclusion: that the § 1983 issues had not actually been litigated in the course of the defendant's conviction, that the criminal proceedings were not necessary to establish the § 1983 claim, and that none of the § 1983 issues were necessarily determined in the criminal proceedings. *See id.* at 316, 103 S.Ct. 2368. The Court's rationale is based in part on concerns unique to collateral estoppel (as opposed to res judicata, which is at issue in this case). Moreover, the procedural history of this case is entirely different from that in *Haring.* In this case, the plaintiff had a full and fair opportunity to raise his constitutional claims in state court—he merely disagrees with the state court's decision as to the merits of those claims.

 

the principles of res judicata, however, plaintiff seeks a collateral review of the state court judgment which is barred by the *Rooker–Feldman* doctrine. The rationale underlying the *Rooker–Feldman* doctrine is that federal district courts do not have jurisdiction to hear appeals of state court judgments. *See Owens,* 54 F.3d at 274. Rather, "[a] party raising a federal question must appeal a state court decision through the state system and then directly to the Supreme Court of the United States." *Id.* The state court decision in this case is presently on appeal to the Michigan Court of Appeals; this Court does not have jurisdiction to interfere in that state appellate process and hear what is, in effect, an appeal from the state court judgment.[4]

### III. CONCLUSION

In sum, all of plaintiff's claims are barred by the doctrine of res judicata. Plaintiff did bring or could have brought these claims in the state court action he filed against the same parties. The state court judgment has preclusive effect in this Court even though plaintiff's appeal from that judgment is presently pending in the state court system. Although plaintiff has named two additional defendants in this action, they are state officials sued in their official capacity and, as such, they are considered parties in privity with the state officials and agencies named in the state court action. Finally, to the extent that plaintiff argues that the Court should disregard the principles of res judicata in this case, this action constitutes a collateral attack on the state court judgment. Under the *Rooker–Feldman* doctrine, the Court lacks subject matter jurisdiction to hear such an appeal from a state court judgment. Accordingly, defendants' motion for summary judgment must be granted.[5]

**4.** Plaintiff suggests that the length of the delay occasioned by the state appellate process warrants federal court intervention. This argument is without merit, however, because under the *Rooker–Feldman* doctrine the Court lacks subject matter jurisdiction over an appeal from a state court judgment. Accordingly, the fact that plaintiff may not obtain relief as quickly as he would

An order consistent with this opinion shall issue forthwith.

like in the state court system does not suffice to establish the Court's jurisdiction.

**5.** Because the Court finds that plaintiff's claims are barred by res judicata, the Court does not reach defendants' alternative standing, mootness, and abstention arguments.