Wanda M. EISFELDER, Plaintiff,

v.

MICHIGAN DEPARTMENT OF NATURAL RESOURCES, a Governmental Entity, Jointly and Severally; Roland Harmes, Director of the Department of Natural Resources, Jointly and Severally; Nathaniel Lake, Jr., Appointing Authority/Personnel Director of the Department of Natural Resources, Jointly and Severally; Robert R. Ring, Chief Labor Relations, Jointly and Severally; Wanda Brown, Labor Relations Officer, Jointly and Severally; Cordree McConnell, Equal Employment Opportunity Executive, Jointly and Severally; Herbert Burns, Chief Law Enforcement Division of Department of Natural Resources, Jointly and Severally; Wayne Kangas, Assistant Chief of the Law Enforcement Division of the Department of Natural Resources, Jointly and Severally; Timothy Fournier, Analyst and Supervisor in the Law Enforcement Division of the Department of Natural Resources, Jointly and Severally; Laura A. Willard, Analyst and Supervisor in the Law Enforcement Division of the Department of Natural Resources, Jointly and Severally, Defendants.

No. 5:92–CV–73.

United States District Court, W.D. Michigan, S.D.

Nov. 16, 1993.

Douglas J. Robson, Holt, MI, Gerald M. Eisfelder, DeWitt, MI, for plaintiff.

Gary P. Gordon, Asst. Atty. Gen., Leo H. Friedman, Frank J. Kelley, Atty. Gen., Public Employment & Elections Div., Lansing, MI, for Mich. Dept. of Natural Resources.

Gary P. Gordon, Asst. Atty. Gen., Leo H. Friedman, Lansing, MI, for Roland Harmes, Nathanial Lake, Jr., Robert R. Ring, Wanda Brown, Cordree McConnell, Herbert Burns, Wayne Kangas, Timothy Fournier, Laura A. Willard.

## OPINION

BENJAMIN F. GIBSON, Chief Judge.

This matter is before the Court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, the motion is granted in part and denied in part.

## I.

This action alleges employment discrimination beginning in 1989. Plaintiff is a long-time employee of the State of Michigan, who was assigned to the Department of Natural Resources ("DNR") as a bookkeeper in 1984. In 1989, she took medical leave from her position for the purpose of surgery on her left leg. After returning to her job, she learned that her supervisor had reassigned some of her duties to a new employee, which resulted in her being given the duties of receptionist for a portion of her day. She was also informed that her work hours were changed from 7:30 a.m. to 4:00 p.m. (with a half-hour lunch) to 8:00 a.m. to 5:00 p.m. (with an hour lunch). This change in work hours had the effect of preventing plaintiff from getting rides to work, which in turn required her to walk further to work.

Due to these events, plaintiff filed a two-count complaint in Ingham County Circuit Court against the DNR in the spring of 1990 for violation of civil service rules (count I) and the Michigan Handicappers' Civil Rights Act (count II). Count I of the complaint was subsequently dismissed due to plaintiff's failure to exhaust her administrative remedies. Count II was settled at a pretrial conference on March 5, 1991, at which time the parties agreed to dismissal of count II in exchange for the payment of $750.00 to the plaintiff and adjustment of her work hours to 7:30 a.m. to 4:30 p.m. (with an hour lunch). A final order of dismissal embodying the settlement was entered on June 26, 1991. However, plaintiff objected to the language of the order and has appealed the dismissal to the Michigan Court of Appeals.

Despite the settlement, plaintiff's hours were not adjusted until January 27, 1992. The DNR claims that this delay was simply caused by oversight on its part. However, during this time, plaintiff continued to complain about her work hours and had her physician send a letter to the DNR in November of 1991 stating that she needed to have her work hours modified because she had contracted multiple sclerosis.

In June 1992, plaintiff and the DNR came to a final impasse. At that time, plaintiff complained to her supervisor that unknown

persons were leaving written "cripple jokes" and memoranda relating to early retirement on her desk. Defendants allegedly investigated these reports without results. However, they also on June 25, 1992, gave to plaintiff a formal counseling memorandum stating that she was to meet for a disciplinary conference on June 29, 1992, to receive a written reprimand for unacceptable work (a reprimand which she says would have been unjustified). Apparently due to the stress caused by these events, plaintiff left work and was unable to return to work. On June 30, 1992, her husband dropped off at the DNR personnel office a copy of a letter from her doctor advising that plaintiff needed medical leave for two months to cope with her medical condition. Some time in the next few weeks (the exact time is disputed), the DNR considered the request for a two-month leave. On July 9, 1992, the DNR denied the request for the reason that plaintiff had already used up her six months of allotted medical leave under the collective bargaining agreement, and placed plaintiff on medical layoff. Apparently at that time, plaintiff had two months of annual leave accumulated which she was not allowed to use for medical purposes. In light of this situation, plaintiff opted to take early retirement on July 14, 1992 (one day before her option to do so closed out), and she then brought this action.

## II.

■ Summary judgment is appropriate only where no genuine issue of fact remains to be decided so that the moving party is entitled to judgment as a matter of law. *Historic Preservation Guild v. Burnley,* 896 F.2d 985 (6th Cir.1989). No genuine issue of material fact exists unless, in viewing the evidence in favor of the nonmoving party, a reasonable fact finder could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Supreme Court decisions encourage granting summary judgments where no genuine issue of material fact exists. *Historic Preservation,* 896 F.2d at 993. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477

U.S. at 249, 106 S.Ct. at 2511 (citations omitted). Mere allegations are insufficient. The party with the burden of proof must provide concrete evidence in support of a claim and thereby demonstrate the existence of a genuine issue of material fact. *Cloverdale Equipment Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989).

■ The party moving for summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the record which demonstrate the absence of a material issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once this has been done, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact on which the nonmoving party will bear the burden of proof at trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53. If after adequate discovery the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of his claim, summary judgment is appropriate. *Id.*

## III.

Plaintiff's complaint for handicap employment discrimination is stated in six counts: count I under the Civil Rights Act (42 U.S.C. § 1983), count II under the Rehabilitation Act (29 U.S.C. § 794), count III under the Michigan Handicappers' Civil Rights Act (M.C.L.A. §§ 37.1101 *et seq.*), and counts IV and V under the Americans With Disabilities Act ("ADA") (42 U.S.C. §§ 12101 *et seq.*). Defendants' motion for summary judgment as to the various counts raises several issues, including: the eleventh amendment, the effect of the state court judgment, the effective dates of the Americans with Disabilities Act, and the effect of the collective bargaining agreement.

## IV.

Generally speaking, the eleventh amendment prohibits a plaintiff from bringing claims against a state and its departments in federal court. When the eleventh amend-

ment applies, the courts are without subject matter jurisdiction to determine the claim. *Henry v. Metropolitan Sewer District,* 922 F.2d 332, 336 (6th Cir.1990). However, a consideration of the eleventh amendment is more complicated than defendants might have this Court believe. Whether the eleventh amendment will bar suit in a particular case depends on the identity of the person being sued, the capacity in which they are sued, and the statutes under which they are sued. E. Chemerinsky, *Federal Jurisdiction* § 7.0–7.7 (1989 & Supp.). For this reason, the Court must examine plaintiff's claims separately.

### A.

■ Count I seeks relief under Title 42 United States Code Section 1983. However, the eleventh amendment case law is clear that a state and its agencies cannot be sued under section 1983 consistent with the eleventh amendment. *Quern v. Jordan,* 440 U.S. 332, 339–40, 99 S.Ct. 1139, 1144–45, 59 L.Ed.2d 358 (1979). Accordingly, count I must be dismissed as to defendant DNR due to lack of jurisdiction.

■ The question of whether the individual defendants must be dismissed is more complicated. In the case of *Hafer v. Melo,* — U.S. ——, ——, 112 S.Ct. 358, 364–65, 116 L.Ed.2d 301 (1991), the Supreme Court held that a plaintiff could sue a state employee, acting in his official capacity, for money damages for which the officer was to be personally liable.

However, to bring such a suit, it must be clear from the complaint that the individual defendants are sued in their "individual capacities." *Wells v. Brown,* 891 F.2d 591, 592 (6th Cir.1989); *Thiokol Corp. v. Dept. of Treasury,* 987 F.2d 376, 383 (6th Cir.1993). In this case, neither the face of the complaint nor its allegations make clear that any of the individual defendants are being sued in their individual capacities. Accordingly, the Court

dismisses count I as to the individual defendants due to lack of jurisdiction.[1]

### B.

■ Count III of the complaint seeks damages for violation of the Michigan Handicappers' Civil Rights Act (M.C.L.A. §§ 37.-1101 *et seq.*). It is logical to suppose that if the eleventh amendment bars suit against states under federal statutes it will also bar suit when based on pendent state claims. The Supreme Court reached this holding in the case of *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). According to the *Pennhurst* court, "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the state that is protected by the eleventh amendment." *Id.* at 121, 104 S.Ct. at 919. Sixth Circuit cases also require dismissal of pendent state claims under the eleventh amendment. *See Gwinn Area Community Schools v. Michigan,* 741 F.2d 840, 846 (6th Cir.1984); *Henry, supra.* Accordingly, the Court dismisses count III due to lack of jurisdiction.

### C.

■ This leaves unresolved the effect of the eleventh amendment on count II (the Rehabilitation Act) and counts IV and V (the ADA). The Court notes that the Supreme Court has held that the eleventh amendment will not bar suits where Congress has by statute expressly abrogated it pursuant to its authority under the fourteenth amendment or commerce clause. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976) (under the fourteenth amendment); *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 19, 109 S.Ct. 2273, 2283, 105 L.Ed.2d 1 (1989) (under the commerce clause).

Not surprisingly, then, Congress has expressly abrogated this immunity with respect to several of the civil rights statutes, includ-

---

1. Plaintiff's complaint does request injunctive relief against the individual defendants, which relief is not barred by the eleventh amendment. *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908); *Hafer, supra.*

However, since plaintiff has retired, her requests that the policies and practices in the workplace be declared illegal and ordered modified are moot.

ing Title VII of the Civil Rights Act. *Fitzpatrick, supra.* As for the Rehabilitation Act, the Supreme Court held in *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 246, 105 S.Ct. 3142, 3149, 87 L.Ed.2d 171 (1985), that Congress had not abrogated the states' immunity under the eleventh amendment. However, this immediately provoked a Congressional response, and the Rehabilitation Act was amended effective October 21, 1986, to circumvent the immunity. *See* 42 U.S.C. § 2000d–7(a)(1); *Cook v. Barry,* 718 F.Supp. 632, 636 (S.D.Ohio 1989). Therefore, the eleventh amendment will not bar count II of this action.

Moreover, when Congress recently enacted the ADA, it included an explicit provision abrogating the eleventh amendment. *See* 42 U.S.C. § 12202. Like the abrogation of the eleventh amendment for Title VII, this would seem to be an appropriate abrogation of the eleventh amendment for the purpose of enforcing the fourteenth amendment. *See Fitzpatrick, supra.* Therefore, the Court will not dismiss counts IV and V due to the eleventh amendment.

## V.

Defendants also request summary judgment on the basis of the state court order of dismissal. In applying the principles of res judicata and collateral estoppel to the judgment, this Court must apply the law of the state issuing the judgment. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 379, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985). Under Michigan law, res judicata, or claim preclusion, prevents a plaintiff from litigating a claim that actually was litigated or could have been litigated in an earlier proceeding. *Katt v. Dykhouse,* 983 F.2d 690, 693 (6th Cir.1992). For the doctrine to apply, (1) the subject matter of the second action and the first must be the same; (2) the parties or their privies must be the same; and (3) the prior judgment must be on the merits. *In re Pardee,* 190 Mich. App. 243, 248, 475 N.W.2d 870, 873 (1991).

Plaintiff's brief appears to argue that this order is not a final judgment. However, it is clear under Michigan law that a consent order is a final judgment on the merits. *See Boland v. C.D. Barnes Associates, Inc.,* 126 Mich.App. 569, 571, 337 N.W.2d 581, 581–82 (1983). It is also clear under Michigan law that the fact an appeal is pending does not affect an order's finality. *See Eliason Corp. v. Michigan Dept. of Labor,* 564 F.Supp. 1298, 1302 (W.D.Mich.1983); *City of Troy v. Hershberger,* 27 Mich.App. 123, 127, 183 N.W.2d 430, 433 (1970). Notwithstanding, plaintiff is correct in maintaining that the prior judgment will not dispose of all claims brought in this action. The very statement of the rule of res judicata, as well as that of collateral estoppel,[2] implies that the judgment will not preclude an action based on a wrong occurring after the date of the judgment. *See, e.g., Kilgoar v. Colbert County Board of Education,* 578 F.2d 1033, 1035 (5th Cir.1978) (holding that "[c]laims based on conduct subsequent to prior litigation are not precluded" by the prior judgment).

Accordingly, the Court grants summary judgment only as to those claims arising before the date of the state court's order of dismissal of June 26, 1991.

## VI.

Defendants also maintain that counts IV and V should be dismissed since the ADA became effective after the conduct in question. It is certainly true that much of the conduct in question occurred prior to the effective dates of the ADA. Title I, which covers employment by all employers employing 15 or more employees, including the state, became effective on July 26, 1992. Pub.L. No. 101–336, § 108, 104 Stat. 330 (July 26, 1990). Title II, which covers accommodations by public entities, including employment by the state, became effective on January 26, 1992. Pub.L. No. 101–336, § 205, 104 Stat. 337 (July 26, 1990).

---

2. Under Michigan law, collateral estoppel, or issue preclusion, precludes relitigation of an issue in a subsequent, differing cause of action between the same persons where the prior pro-

ceeding resulted in a valid, final judgment and the issue was necessarily litigated and determined. *People v. Gates,* 434 Mich. 146, 155, 452 N.W.2d 627, 630 (1990).

■ Case law dealing with the substantive provisions of the ADA has already stated that they should not be applied prior to their effective dates. *Barraclough v. ADP Automotive Claims Servs., Inc.*, 818 F.Supp. 1310, 1311–12 (N.D.Cal.1993); *Major v. Southeastern Pennsylvania Transportation Authority*, 60 E.P.D. ¶ 42,007 (E.D.Pa.1993). In this case, the last act of alleged discrimination occurred on July 9, 1992, when defendants placed plaintiff on medical layoff and denied her further leave. Since this occurred prior to the effective date of Title I, defendants are entitled to summary judgment as to count IV (which alleges violation of Title I). They are not entitled to complete summary judgment on count V since Title II's effective date predates some of the alleged misconduct.[3] They are, however, entitled to partial summary judgment as to count V for all claims arising before January 26, 1992.

## VII.

■ Finally, defendants urge the Court to dismiss portions of any count relating to defendants' conduct of July 9, 1992, in not granting additional medical leave (or allowing her to use her annual leave for medical leave) because the request was for time not allowed her under the relevant collective bargaining agreement. The cases cited in favor of this argument, including the Sixth Circuit case of *Jasany v. United States Postal Service*, 755 F.2d 1244, 1251–52 (6th Cir.1985), all include workers being discharged after requesting that their jobs be restructured in ways that would usurp other workers' functions. The Sixth Circuit has held that a reasonable accommodation does not include reassigning tasks in a manner inconsistent with the collective bargaining agreement. *Jasany, supra.* In contrast, the present request for accommodation would not have required the DNR to reassign tasks or otherwise affect the rights of other workers—it required only that plaintiff be allowed to use her annual leave for sick time. As such, it would appear a reasonable accommodation.[4]

This conclusion is also consistent with recent changes in the law. The ADA was recently enacted with provisions which make it illegal for an employer to contract with labor unions in ways which would result in discrimination to handicap workers. *See* 42 U.S.C. § 12112(b)(2). This aspect of the statute has been incorporated into the regulations interpreting Title I, Title II, and the Rehabilitation Act. *See* 28 C.F.R. § 41.52(d); 29 C.F.R. § 1630.6. Accordingly, the Court will not use defendants' collective bargaining agreement, which may itself be discriminatory, as a bar to this action.

## VIII.

Therefore, defendants' motion is granted in part and denied in part. Counts I and III are dismissed due to lack of jurisdiction. Count IV is dismissed since as to it defendants are entitled to judgment as a matter of law. Claims under count V arising before January 26, 1992, are dismissed since as to them defendants are entitled to judgment as a matter of law. Claims under count II arising before June 26, 1991, are also dismissed since as to them defendants are entitled to judgment as a matter of law.

---

3. Defendants also argue that Title II was not violated since they received no formal request for accommodation. However, defendants have cited no legal support for their contention that plaintiff's failure to follow a formal accommodation procedure eliminates her protection under the ADA. Moreover, this insistence runs counter to the language of the statute and regulations, which require accommodation of any "known handicaps."

4. Other cases cited by the defendants are not apposite in that they concern reasonable accommodation in the context of a religious discrimination under Title VII, which is an area in which the courts have required only *de minimis* accommodation. In contrast, cases interpreting the Rehabilitation Act have required the employer to go much further in reaching accommodation. *See Alexander v. Choate*, 469 U.S. 287, 300–02, 105 S.Ct. 712, 719–21, 83 L.Ed.2d 661 (1985); *Doherty v. Southern College of Optometry*, 862 F.2d 570, 575 (6th Cir.1988).