Sarah BOYLE

v.

**BROWN UNIVERSITY, Stephen Smith, M.D., individually and in his capacity as Associate Dean of Medicine of Brown University, Helen Scerr, individually and in her capacity as an employee of Brown University, and the Impaired Medical Students Committee.**

**Civ. A. No. 94–0055–B.**

United States District Court,
D. Rhode Island.

April 5, 1995.

Joel D. Landry, Landry & Connors Law Associates, Providence, RI, for plaintiff.

Christopher H. Little, and Fran Robins–Liben, Christopher H. Little & Associates, Providence, RI, for Brown University and Stephen R. Smith and Helen Cserr in their official Capacity, and Impaired Medical Students Committee.

## ORDER AND FINAL JUDGMENT

FRANCIS J. BOYLE, Senior District Judge.

This action came before the Court on April 4, 1995 for consideration of Plaintiff's objection to the report and recommendation of the United States Magistrate Judge dated February 27, 1995 recommending that the motion of the Brown University defendants, seeking partial summary judgment and the dismissal of the pendent state law claims be granted. Upon consideration of the memoranda of the parties, the report and recommendation of the Magistrate Judge, and the oral argument of counsel, the Court hereby

### ORDERS:

A. That the motion for partial summary judgment and for dismissal of the pendent state law claims is hereby granted.

B. The complaint is dismissed; and

C. Judgment shall enter on behalf of defendants.

### REPORT AND RECOMMENDATION

LOVEGREEN, United States Magistrate Judge.

Before the Court are two motions by the defendants. The first is a motion for partial summary judgment and for dismissal of pendent state law claims by Brown University ("Brown"), its Impaired Medical Students Committee, Stephen Smith, M.D., in his capacity as Associate Dean of Medicine of Brown, and Helen Cserr, in her capacity as an employee of Brown (collectively, the "Brown Defendants"). The second is a motion by Dr. Stephen Smith and Helen Cserr for summary judgment on claims brought against them in their individual capacities for breach of confidentiality and defamation (collectively, the "Individual Defendants"). The plaintiff, Sarah Boyle, brought this action, alleging violations of the Americans with Disabilities Act (ADA) 42 U.S.C. § 12101 *et seq.*, a cause of action entitled "Breach of Confidentiality," and claims of libel and slander.

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B) and Local Rule of Court 32(c). Based upon the following analysis, I recommend the Brown Defendants' motion for partial summary judgment and dismissal of pendent state law claims be granted, and the Individual Defendants' motion for summary judgment be denied as moot.

### Facts

The plaintiff, currently a fourth year student in the Brown University Medical School (the "Medical School"), began her studies at the school in September, 1990. Unbeknownst to the defendants, plaintiff had previously been diagnosed as suffering from chronic fatigue syndrome. During her first semester at the Medical School, plaintiff sought and obtained a number of accommodations from her professors without informing them that she suffered from chronic fatigue syndrome, including additional time to take examinations and a room separate from the other students in which to take her examinations. Plaintiff obtained these accom-

modations in Biology 117, a course in physiology taught by Professor Helen Cserr ("Cserr"), among other courses.

On December 13 and 14, 1990, Dean Stephen Smith ("Smith") was contacted by three separate faculty members who all expressed concern about behavior exhibited by plaintiff when she complained that the accommodations she had received were unfair and disputed the grading of one of her examinations. The complaining professors raised questions about plaintiff's emotional stability. Professor Cserr was one of these faculty members. Prior to these contacts Dean Smith had been unaware that plaintiff was receiving any special accommodations. Based on the faculty members comments, Dean Smith considered whether to request plaintiff seek an independent psychiatric evaluation or to refer her to the Impaired Medical Students Committee ("IMSC") or to make an administrative decision directly. Dean Smith decided to refer the matter to the IMSC, an independent and autonomous body outside of the Medical School administration that was set up by the Rhode Island Medical Society to assist medical students who have problems while in school.

On January 21, 1991, a representative of the IMSC contacted plaintiff and asked her to meet with the committee. The plaintiff refused and instead, arranged a meeting with Dean Smith which took place on January 24, 1991. That meeting was attended by Dean Smith, the plaintiff and her husband, and Ruth Sauber, the Student Affairs Officer for the Program in Medicine at Brown. At the meeting, Dean Smith presented plaintiff with two options. She could either submit to a psychiatric evaluation or agree to go before the IMSC. Plaintiff refused to do either, so Dean Smith placed her on a leave of absence. Following the meeting, Dean Smith confirmed this action in a letter to plaintiff dated January 24, 1991 which stated that as of that date plaintiff was placed on a leave of absence for psychological reasons and set out the effect of such leave and the procedures by which plaintiff could return to the full time study of medicine at Brown. As of January 24, 1991, plaintiff had still not revealed to the defendants that she suffered from chronic fatigue syndrome. Thereafter, as a result of conversations between Dean Smith, plaintiff and plaintiff's counsel, the plaintiff agreed to proceed before the IMSC and was allowed to attend classes throughout the spring 1991 term.

The IMSC met with plaintiff a number of times during the spring 1991 term and reported back to Dean Smith on April 15, 1991. Based on that report, by letter dated May 1, 1991, Smith reinstated the plaintiff retroactively back to the beginning of the spring term without qualification. In that letter, Smith noted that

it appears that you [plaintiff] do not have an emotional or psychological problem of such duration or severity as to affect academic performance ... [and] although you [plaintiff] apparently are able to perform academically, the behavioral issues remain. These issues must be resolved, particularly as you enter the clinical years where your professional behavior with patients, peers and faculty will be judged with equal weight as your cognitive knowledge.

(Individual Defs.' Ex. 7.) Plaintiff then took her examinations in the spring of 1991 and is still enrolled in the Medical School.

Plaintiff asserts that she has encountered further difficulties as a result of the above incident. She claims that she has had "problems with her loan package as they are constantly trying to out-process her student loans," "has experienced professors that refused to speak to her," has had "a student approach her about her health," and "was denied honors in a course because of this matter." (Pl.'s Mem. in Supp. of her Obj. to Defs.' Mot. for Partial Summ. J. ("Pl.'s Mem.") at 4 (citations omitted).)

Count I of the plaintiff's complaint alleges that the Brown defendants discriminated against her based on her disability of chronic fatigue syndrome in violation of the ADA, 42 U.S.C. § 12101 *et seq.* Counts II and III set forth pendent state law claims that plaintiff asserts this Court has supplemental jurisdiction over pursuant to 28 U.S.C. § 1367(a). Count II alleges that the defendants' dissemination of plaintiff's medical records and information concerning her medical condition to members of the Brown administration and

the general public constituted "a breach of confidentiality and violation of Plaintiff's due process rights." (Complaint ¶¶ 23–29.) Finally, Count III alleges that "Defendants' actions in disseminating information concerning Plaintiff's medical history, through verbal and written communications, constitutes common law libel and common law slander." *Id.* ¶ 31.

## Discussion

### I.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) states that a party shall be entitled to a summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When determining a motion for summary judgment, I must review the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. *Mesnick v. General Electric Co.,* 950 F.2d 816, 820 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993); *Lawrence v. Northrop Corp.,* 980 F.2d 66, 68 (1st Cir.1992).

Summary judgment is a procedure that involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). Once the moving party meets this burden, the onus falls upon the nonmoving party, who must oppose the motion by presenting facts

that show that there is a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56(e)); *see Goldman,* 985 F.2d at 1116; *Lawrence,* 980 F.2d at 68; *Garside,* 895 F.2d at 48 "[A] 'genuine issue' exists if there is 'sufficient evidence supporting this claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial.'" (quoting *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)). To oppose the motion successfully, the nonmoving party "may not rest upon mere allegation or denials of his pleading." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Moreover, the evidence presented by the nonmoving party " 'cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.'" *Mesnick,* 950 F.2d at 822 (quoting *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989)). Indeed, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). Thus, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." *Goldman,* 985 F.2d at 1116 (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510).

### II.  Count I—Americans with Disabilities Act Claim

█ The Brown Defendants should be granted summary judgment on plaintiff's ADA claim. Congress, in enacting the ADA, specifically provided that the act's various titles would not become effective when the ADA was signed into law but instead, would be delayed for a period of either eighteen or twenty four months thereafter, depending on the title in question. *Raya v. Maryatt Industries,* 829 F.Supp. 1169, 1173 (N.D.Cal.

1993). Title III of the ADA, 42 U.S.C. §§ 12181–12189, which prohibits discrimination based on disabilities in public accommodations and services operated by private entities, has the earliest effective date of the potentially applicable titles of the ADA to this case. It became effective on January 26, 1992. Act July 26, 1990, Pub.L. No. 101–336, Title III, § 310, 104 Stat. 365.

It is widely held that the ADA does not apply retroactively, and therefore, conduct occurring before the act's effective date is not actionable thereunder. *Raya v. Maryatt Industries,* 829 F.Supp. at 1174; *Verdon v. Consolidated Rail Corp.,* 828 F.Supp. 1129, 1142 (S.D.N.Y.1993); *Rothman v. Emory University,* 828 F.Supp. 537, 541 (N.D.Ill. 1993); *Eisfelder v. Michigan Department of Natural Resources,* 847 F.Supp. 78, 84 (W.D.Mich.1993); *Barraclough v. ADP Automotive Claims Services, Inc.,* 818 F.Supp. 1310, 1311 (N.D.Cal.1993); *but cf. Clarkson v. Coughlin,* 145 F.R.D. 339 (S.D.N.Y.1993) (allowing a complaint to be amended to include an ADA claim based upon acts occurring prior to the ADA's effective date with no analysis of whether the ADA may be applied retroactively). Plaintiff's claims of discrimination arising from all the defendants' conduct during her first year at the Medical School are therefore unactionable. The last act of discrimination that she complains of that year was Dean Smith's letter of May 1, 1991, reinstating the plaintiff retroactively back to the beginning of the spring term and mentioning that plaintiff's behavioral issues remained. (Individual Defs.' Ex. 7.) This and all the events prior thereto clearly took place before the January 26, 1992 effective date of Title III of the ADA and therefore, cannot form the basis of the plaintiff's ADA claims.

■ Plaintiff attempts to rectify this by arguing that "Plaintiff has set out a form of harassment that commenced in 1991, *however-er continued through the present.*" (Pl.'s Mem. at 4 (emphasis added).) In an attempt to demonstrate the continuation of this harassment, plaintiff sets out a list of events that occurred "because of" or "as a result of" her difficulties with the administration during her first year at the Medical School. These include: the defendants' failure to return all of plaintiff's medical records; the plaintiff's problems with her loan package; student inquiries about her health which have embarrassed her; and faculty members denying her honors recognition. (Pl.'s Mem. at 4–5.) Plaintiff appears to contend that these vague allegations of activity occurring after January 26, 1992 evidence some sort of continuing violation such that the conduct prior to January 26, 1992 is actionable. Such contention is without merit.

"The continuing violation theory provides that where the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time-barred." *McGregor v. Louisiana State Univ. Board of Supervisors,* 3 F.3d 850, 866 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1103, 127 L.Ed.2d 415 (1994). However, courts must be vigilant in differentiating between a series of ongoing discriminatory acts, extending into the prescriptive period, which appropriately comprise a continuing violation, and the continuing effects or consequences resulting from discriminatory acts which occurred outside of that period. *Johnson v. Rodriguez,* 943 F.2d 104, 108 (1st Cir.1991) (declining to apply the continuing violation theory in the context of the three year statute of limitation in Mass.Gen.L. ch. 260 § 2A as applied to a claim pursuant to 42 U.S.C. § 1983), *reh'g denied, cert. denied,* 502 U.S. 1063, 112 S.Ct. 948, 117 L.Ed.2d 117 (1992); *Gilbert v. City of Cambridge,* 932 F.2d 51, 58–59 (1st Cir.) (same), *cert. denied,* 502 U.S. 866, 112 S.Ct. 192, 116 L.Ed.2d 153 (1991), *reh'g denied,* 502 U.S. 1051, 112 S.Ct. 922, 116 L.Ed.2d 820 (1992); *Jensen v. Frank,* 912 F.2d 517, 523 (1st Cir.1990) (declining to apply the continuing violation theory in the context of Title VII's requirement that a plaintiff contact an Equal Employment Opportunity counselor within 30 days of the event triggering the claim, 29 C.F.R. § 1613.214). Thus, in the context of claims under the ADA, stemming from conduct which occurred prior to the act's effective date, "[a] plaintiff cannot use the continuing violation theory 'to resurrect claims about discrimination ... concluded in the past, even though its effects still persist.'"

*McGregor v. Louisiana State,* 3 F.3d at 867 (quoting *Berry v. Board of Supervisors of L.S.U.,* 715 F.2d 971, 979 (5th Cir.1983)).

In the present case, plaintiff specifically states that the conduct she contends evidences a continuing violation of the ADA resulted from the alleged discrimination that took place in her first year of Medical School, prior to the January 26, 1992 effective date of Title III. These "natural, if not bitter fruits" of unactionable alleged discriminatory acts do not resurrect claims which accrued before the effective date of the ADA. *Jensen v. Frank,* 912 F.2d at 523. Moreover, as to each of the allegations in this list, plaintiff is unable to specify when the alleged harassment occurred or who it was who harassed her and therefore, cannot rely on these allegations to support any claim that the defendants committed acts which independently violated the ADA after the date it became effective. Consequently, the defendants' should be granted summary judgement on plaintiff's ADA claim in Count I of the Complaint.

### III. Due Process Claims

█Throughout plaintiff's complaint and her opposition to the present motions, she makes passing reference to the fact that her due process rights have been violated. To the extent that these references can be considered to make out claims under the Due Process Clauses of the Fifth or Fourteenth Amendments to the United State Constitution, they are without merit. The protections of the Due Process Clauses in both the Fifth and Fourteenth Amendments apply only to the actions of federal and state government actors, respectively, and not private actors. *Gerena v. Puerto Rico Legal Services, Inc.,* 697 F.2d 447, 449 (1st Cir.1983) (holding the Due Process Clause of the Fifth Amendment only applies to federal government actors, not private ones); *Johnson v. Educational Testing Service,* 754 F.2d 20, 23 (1st Cir.) (holding the Due Process Clause of the Fourteenth Amendment only applies to state government actors, not private ones), *cert. denied,* 472 U.S. 1029, 105 S.Ct. 3504, 87 L.Ed.2d 635 (1985). Plaintiff has made no allegation that Brown is such a government actor and points to no fact in the record to support such a contention. Therefore, any due process claim that can be read from plaintiff's pleadings is without merit.

### IV. Rehabilitation Act, 29 U.S.C. § 794

█ Plaintiff makes a passing reference to the Rehabilitation Act, 29 U.S.C. § 794, in her memorandum in opposition to the Brown Defendants' motion. That act was in effect during the time period at issue in this case and currently provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 7(8) [29 U.S.C. § 706(8) ], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance....

Nevertheless, the Rehabilitation Act is mentioned nowhere in the plaintiff's complaint, and she does not discuss its applicability to this case in her memoranda. Therefore, she cannot be considered to have asserted a claim thereunder.

### V. Counts II and III—Pendent State Law Claims

█ The defendants should be granted summary judgment on plaintiff's state law claims of breach of confidentiality and libel and slander in Counts II and III of her complaint respectively. The Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a), but pursuant to 28 U.S.C. § 1367(c)(3), the Court has the discretion to decline to exercise such jurisdiction over these claims when plaintiff's federal claims are no longer viable. Such is the case here. I have found that the defendants' should be granted summary judgment on plaintiff's ADA and Due Process claims. Therefore, the Court should decline jurisdiction over plaintiff's pendent state law claims in Counts II and III.

### Conclusion

For the reasons stated, I recommend the Brown Defendants' motion for partial summary judgment and dismissal of pendent state law claims be granted, and the Individ-

ual Defendants' motion for summary judgment be denied as moot.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. Local Rule of Court 32; Fed. R.Civ.P. 72(b). Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the district court. *United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir.1980).

February 27, 1995.